UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| TRAVIS J. KIMBROUGH, | ) | |
| --- | --- | --- |
| | ) | Case No. 2:25-cv-83 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Cynthia R. Wyrick |
| JORDAN PEBIAN, BLAKE CICERO, | ) | |
| and STANLEY FLUELLEN, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

This Court previously ordered pro se Plaintiff Travis J. Kimbrough, an inmate in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Hawkins County Jail, to file an amended complaint (Doc. 6). Plaintiff has complied with that Order, and his amended complaint (Doc. 7) is now before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA") to determine whether it states a justiciable claim. *See* 28 U.S.C. § 1915(e) and § 1915A.

I.  ALLEGATIONS OF AMENDED COMPLAINT

On April 10, 2025, Hawkins County Correctional Officers ("COs") Jordan Pebian and Blake Cicero stated that Plaintiff had "disobeyed a minor order[,]" and they ordered him to lock down (Doc. 7, at 3–4). Plaintiff put his hands behind his back "to speak to them" in a calm manner (*id.* at 4). CO Pebian slammed Plaintiff into a wall and slammed Plaintiff's head to the floor, as CO Cicero tasered Plaintiff (*id.*). Plaintiff suffered concussion-like symptoms for weeks and lost his sense of smell (*id.*). Plaintiff was placed in a "camera cell" for a week and provided a "couple of Tylenol" but no other medical treatment (*id.*). Plaintiff also lost his drug court application,

because he was given a disciplinary write up and deemed violent (*id.*). Therefore, this incident hindered his rehabilitation (*id.*).

Plaintiff could "not get anyone to tell [him] who logged or opened [his] legal mail" on May 8, 2025, "because they don[']t answer request[s] or grievances in a timely mann[e]r" (*id.* at 5). But whoever delivered Plaintiff's mail while he was sleeping violated his legal mail privileges (*id.*).

After Plaintiff contracted a staph infection, CO Stanley Fluellen made Plaintiff "show [him]self in front of him and inmates" to prove why he cannot sit or squat when guards do a walk-through (*id.*). Plaintiff is degraded and embarrassed by the request, and he has been given the nickname "3rd nut" (*id.*). Plaintiff thinks this violates his PREA rights, because now he feels "violated" around CO Fluellen and other inmates (*id.*).

Aggrieved, Plaintiff filed this amended complaint against COs Pebian, Cicero, and Fluellen, seeking monetary damages and "fair placement" in a rehabilitation program (*id.* at 7).

## II.  SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the

PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

## III. ANALYSIS

### A. Use of Force

Plaintiff's allegations that COs Pebian and Cicero used improper force against him implicate the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment is applicable to the States through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 666–67 (1962). Where a prisoner alleges that an official used excessive force against him, courts must examine two issues to determine whether the force violated the Eighth Amendment: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm[,]" which is known as the subjective component; and (2) whether the conduct, in context, is

3

sufficiently serious to offend "contemporary standards of decency[,]" which is known as the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

A permissible inference from Plaintiff's allegations is that COs Pebian and Cicero used gratuitous force against him, and the Court finds Plaintiff has plausibly alleged the subjective component of an Eighth Amendment claim. And at this stage of the litigation, the Court also presumes that concussion-like symptoms are sufficiently serious to satisfy the Eighth Amendment's objective component. *See, e.g., Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (holding that in excessive-force context, the focus is on "the nature of the force" rather than "the extent of the injury"). Accordingly, Plaintiff's use-of-force claim will **PROCEED** against Defendants Pebian and Cicero in their respective individual capacities.

However, Plaintiff does not plausibly allege that a custom or policy of Hawkins County caused his alleged constitutional injuries, and therefore, any official-capacity claims against Defendants Pebian and Cicero will be **DISMISSED**. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

B.  **Disciplinary Charge & Loss of Drug Court Application**

Plaintiff complains that, because of the April 10 incident with COs Pebian and Cicero, he received an improper disciplinary writeup and lost the opportunity to attend drug court (Doc. 7, at 4). However, inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnel*, 418 U.S. 539, 564–71 (1974). This is true even if the charge later

4

turns out to be unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). And the loss of Plaintiff's drug court application as a result of that disciplinary conviction also fails to implicate constitutional privileges, as prisoners do not possess a constitutional right to rehabilitation. *See, e.g., Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). Therefore, these claims will be **DISMISSED**.

### C. Legal Mail

Plaintiff alleges that his legal mail was opened outside of his presence on May 8, 2025 (Doc. 7, at 5). It is well settled that prisoners have a First Amendment right to send and receive mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003). But recognizing the need to balance the prison's needs for security and safety against the prisoner's countervailing legal rights, prison officials can open "legal mail" and inspect it for contraband in the prisoner's presence, *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974), "if such a request" to be present "has been made by the prisoner[,]" *Sallier*, 343 F.3d at 874. Generally, to be considered constitutionally protected legal mail, such mail must be "properly and clearly marked" as such. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).

Even presuming that Plaintiff's incoming legal mail was opened on May 8, 2025, despite being clearly marked as such, an inmate must "allege routine opening or interference with his mail" to state a constitutional claim. *Barnes v. Daviess Cnty. Gov't*, No. 4:22-cv-P107, 2022 WL 17475783, at *4 (W.D. Ky. Dec. 6, 2022) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.

5

2003)); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (finding that even though defendants "admitted to opening one piece of [the plaintiff's] constitutionally protected legal mail by accident[,] [s]uch an isolated incident, without any evidence of improper motive or resulting interference with [the plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation"). Here, Plaintiff has alleged only once instance where a document marked as legal mail was opened outside of his presence, which is insufficient to establish a violation of his First Amendment rights. *See*, *e.g.*, *Barnes v. Daviess Cnty. Gov't*, 2022 WL 17475783, at *4. Therefore, this claim will be **DISMISSED**.

      D.      **Bodily Privacy**

Plaintiff maintains that "[a]fter the medical in[ci]dent of sta[ph] infection[,] Stanley Fluellen is the guard who makes me show myself in front of him and inmates . . . . to prove why I can[']t sit or squat when g[ua]rds do a walk through" (Doc. 7, at 5). Plaintiff maintains it has earned him the nickname "3rd nut" and believes the conduct "violates P[REA] right[s] somehow" (*id.*).

Though Plaintiff's allegations are not particularly clear, it appears he is claiming that CO Fluellen visually searches Plaintiff's private area when doing a walk through to prove Plaintiff is not hiding something in his clothing that prevents him from sitting or squatting. Such an allegation implicates the Fourth Amendment's prohibition against unreasonable searches. U.S. Const. amend IV.

Typically, prisoners maintain no right to privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells

required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). However, a search that is unreasonable in its purpose or manner violates the Fourth Amendment, even if it was conducted for a legitimate penological purpose. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 559 (1979). To determine whether a search is reasonable under the Fourth Amendment, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Id.* In doing so, a court must first "examine the scope, manner, and location of the search—as well as the justification for initiating it—in order to assess the degree to which it invaded the prisoner's right to privacy." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (citation omitted). Then, it must "evaluate the need for the search, giving due deference to the correction officer's exercise of h[is] discretionary functions." *Id.* And finally, the court "determine[s] whether the search was reasonably related to legitimate penological interests by weighting the need against the invasion." *Id.* (citation omitted).

Plaintiff has not advanced any facts as to "scope, manner, and location of" CO Fluellen's searches, nor does he state facts that would permit the inference that a visual search of Plaintiff's person to demonstrate that he does not possess contraband is constitutionally problematic. *Stoudemire*, 705 F.3d at 572. Moreover, Plaintiff has not alleged that members of the opposite sex are permitted to observe him in a state of undress. *See, e.g., Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (observing right to privacy claim under Fourth Amendment where male inmate forced to endure outdoor strip search in presence of female correctional officers).

Additionally, even if CO Fluellen's conduct constituted a violation of PREA—the Prison Rape Elimination Act—that statute "does not create rights enforceable by a private party in a civil action." *Violett v. King*, No. 3:19-CV-P524-CHB, 2019 WL 6709391, at * (W.D. Ky. Dec. 9,

7

2019) (citations omitted); *see also Bensfield v. Murray*, No. 4:21-CV-P104-JHM, 2022 WL 508902, at *3 (W.D. Ky. Feb. 18, 2022) ("PREA does not create a private cause of action which can be brought by an individual plaintiff." (citations omitted)).

Therefore, Plaintiff has not presented sufficient facts to render a bodily privacy claim plausible, and this claim will be **DISMISSED**. *See Twombly*, 550 U.S. at 570 (holding plaintiff must "nudge[] their claims across the line from conceivable to plausible").

### IV. CONCLUSION

1. Plaintiff has set forth a plausible use-of-force claim against Jordan Pebian and Blake Cicero in their respective individual capacities, and this claim will **PROCEED**;

2. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Pebian and Cicero;

3. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

4. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

5. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

6. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him;

7. All other claims and Defendants are hereby **DISMISSED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**